# EXHIBIT 11

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

THE PEOPLE OF THE STATE OF MICHIGAN

  - vs -                  Case No. 87-0925-FC

MARK CLEARY,

               Defendant.

_____/

PROCEEDINGS

BEFORE THE HONORABLE JAMES M. BIERNAT (P - 10793) JUDGE

MOUNT CLEMENS, MICHIGAN - WEDNESDAY, DECEMBER 14, 2004

APPEARANCES:

| | |
|---|---|
| For the People: | MR. RICHARD GOODMAN (P34395)<br>Macomb County Prosecutor's Office |
| For the Defendant: | MR. STEPHEN T. RABAUT (P31143)<br>Attorney at Law |
| REPORTED BY: | ANGELA M. LITTLE, RPR, CSR-6444<br>Certified Court Reporter<br>(586) 469-5832 |

1          I  N  D  E  X
2
3
4
5    WITNESSES:    PLAINTIFF                              PAGE
6    None.
7
8
9    WITNESSES:    DEFENDANT
10
11
12
13
14    EXHIBITS                                      ADMITTED
15    NONE OFFERED.
16
17
18
19
20
21
22
23
24
25

                                                          2

1                                Mount Clemens, Michigan

2                                Wednesday, December 14, 2004

3                                At about 9:40 a.m.

4                      *        *        *

5              THE COURT:  Calling the case of the People

6       of the State of Michigan versus Mark Cleary.  Counsel, please

7       place your respective appearance on the record.  You may

8       remain seated at the counsel table.

9              MR. RABAUT:  Stephen Rabaut appearing on

10      behalf of Mr. Mark Cleary.  Judge, Mr. Cleary is incarcerated

11      with the Michigan Department of Corrections.  He is not

12      writted here but I would waive his appearance for today's

13      proceeding.

14             THE COURT:  Very well.  The Court finds it

15      unnecessary, does not consider this to be a critical step

16      process.  It may be an important but his presence is not

17      critical to these proceedings and, therefore, the waiver is

18      accepted.  We will proceed without him.

19             MR. GOODMAN:  For the record, your Honor,

20      Richard Goodman, assistant prosecuting attorney, appearing on

21      behalf of the People.

22             THE COURT:  Okay.

23             This is the date and time set for the

24      Court's decision on defendant's -- rather, the defense's

25      motion to modify and obtain relief from judgment pursuant to

1       MCR 6.500 et seq.  This case is the case of the People of the
2       State of Michigan versus Mark Norman Cleary.  Case No.
3       87-0925-FC.
4                       The defendant brings this motion for
5       relief following his conviction on CSC first degree in
6       violation of MCL 750.520 subsection (b)(1)(a) following a jury
7       trial.  The defendant was sentenced on March 15, 1989 to 240
8       months to 360 months.  A claim of appeal was filed as of right
9       from the sentence of 3/15/1989 on court of appeals Docket No.
10      118402.  The appeal was denied and sentence was affirmed in a
11      published opinion dated November 4, 1993.  Application for
12      leave was filed in the Michigan Supreme Court under Docket No.
13      98212.  That also was denied.
14                      The defense has set forth a number of
15      grounds for relief from judgment or, in support of the relief,
16      requested amongst which are, as this Court perceives them to
17      be, ineffective assistance of trial and appellate counsel,
18      newly discovered evidence in the form of the deposition
19      testimony from the sole complainant recanting her statement or
20      testimony at trial, abuse of a trial court's discretion in an
21      improper exclusion of possible verdict when instructing the
22      jury, and improper remarks made by the prosecution during
23      argument.
24                      The issue of ineffective assistance of
25      counsel was raised on appeal both in Michigan Court of Appeals

1  and the Michigan Supreme Court. The request at this time is
2  for a Ginther hearing, but grant motion to modify and obtain
3  relief from judgment pursuant to MCR 6.50.
4          The Court will first address the
5  defendant's argument that pursuant to MCR 6.508 (d)(3)(a) good
6  cause exist to grant defendant's motion for relief from
7  judgment due to ineffective assistance of trial and appellate
8  counsel. MCR 6.500 establishes the procedure for post-appeal
9  proceeding challenging a criminal conviction. MCR 6.508
10 entitled Procedure applies in the instant case subsection D;
11 that is, Entitlement to Relief, requires that the defendant,
12 Mark Cleary, demonstrate the following:
13         The defendant has the burden of
14 establishing entitlement to the relief requested. The Court
15 may not grant such relief to the defendant if the motion:
16         (1) Seeks relief from the judgment of
17 conviction and sentence that is still subject to challenge on
18 appeal pursuant to subchapter 7.000, or subchapter 7.300.
19 That is not the case in this instance.
20         Secondly, that it alleges grounds for
21 relief which were decided against the defendant in a prior
22 appeal or proceeding under this subchapter unless the
23 defendant establishes that a retroactive change in the law has
24 undermined the prior decision.
25         (3) Alleges grounds for relief other than

5

1  jurisdictional defects which could have been raised on appeal
2  from the conviction and sentence which a prior motion under
3  this subsection unless the defendant demonstrates (a) good
4  cause for failure to raise such grounds on appeal or in a
5  prior motion and (b) actual prejudice from the alleged
6  irregularities that support the claim for relief as used in
7  this sub rule.  Actual prejudice means under sub (i) in a
8  conviction following a trial but for the alleged error the
9  defendant would have had a reasonable -- reasonably or
10  reasonable likely chance of acquittal.
11          In any case, in (3), subsection 3 thereof,
12  reads as follows:  In any case, the irregularity was so
13  offensive to the maintenance of a sound judicial process that
14  the conviction should not be allowed to stand regardless of
15  its effect on the outcome of the case.
16          The Court may, of course, waive the good
17  cause requirement under sub rule D (3)(a) if it concludes that
18  there are significant possibilities that the defendant is
19  innocent of the crime.  I'm sorry.  The defendant argues that
20  good cause -- that pursuant to MCR 6.508 (d)(3)(a) good cause
21  exist to grant defendant Mark Clearly's motion for relief from
22  judgment due to ineffective assistance of trial and appellate
23  counsel, newly discovered evidence in the form of a deposition
24  testimony from the sole client recanting her testimony, abuse
25  of a trial court judge's discretion in improper exclusion of

1    possible verdict when instructing the jury, and improper

2    remarks made by the prosecutor during argument.

3                    The Court, first of all, will deal with

4    the issue of ineffective -- the claim of ineffective

5    assistance of appellate and trial counsel.  And at the outset,

6    the Court finds that the defendant has not shown good cause

7    for his procedural default nor actual prejudice which would

8    warrant a grant of relief from judgment based on ineffective

9    assistance of appellate and trial counsel.

10                   The defendant herein has filed this motion

11   under MCR 6.508(d).  And in order to prevail on a motion for

12   relief from judgment, the defendant has the burden to

13   establish that he is entitle to such relief.  The Court cannot

14   grant relief to the defendant pursuant to this section under

15   the following circumstances:  If the defendant alleges grounds

16   for relief which were decided against the defendant in a prior

17   appeal or proceeding under this subchapter, unless the

18   defendant establishes that a retroactive change in the law has

19   undermined the prior decision, or (3) alleges grounds for

20   relief other than jurisdictional defects which could have been

21   raised on appeal from the conviction and sentence or in a

22   prior motion under this subchapter unless the defendant

23   demonstrates (a) reads as follows:  Good cause for failure to

24   raise such grounds on appeal or in the prior motion.

25                   In order to be entitle to relief on a

ANGELA M. LITTLE, CSR 6444, RPR
40 N. Main Street, Mt. Clemens, MI 48043
(586) 469-5832

1    nonjurisdictional issue, the defendant must establish good

2    cause and actual prejudice from the irregularity.  The

3    defendant herein alleges that he can establish good cause due

4    to the alleged ineffective assistance of appellate counsel in

5    his first appeal.  Cause for excusing procedural default is

6    established by proving ineffective assistance of appellate

7    counsel pursuant to the standards set forth in Strickland

8    versus Washington.  As by showing that some external factor

9    prevented counsel from previously raising the issue.

10                   The Michigan standard for ineffective

11    assistance of counsel is the same as the federal standard.

12    For a defendant to establish a claim that he was denied his

13    state or federal constitutional right to effective assistance

14    of counsel, he must show his attorney's representation fell

15    below an objective standard of reasonableness and that this

16    was so prejudicial to him that it denied him a fair trial.

17                   However, it should be noted that our

18    appellate court have ruled that an appellate attorney need not

19    advance every arguably meritorious issue on appeal, nor must

20    counsel raise every non-frivolous issue requested by the

21    defendant.  The federal courts of appeal have consistently

22    held that the appellate courts are not to second guess the

23    professional judgment of appellate counsel as to the issues

24    raised on appeal even as to nonfrivolous issues.

25                   The defendant in this matter has alleged

ANGELA M. LITTLE, CSR 6444, RPR
40 N. Main Street, Mt. Clemens,MI 48043
(586) 469-5832

1   that his appellate counsel should have raised the issue of

2   ineffective assistance of trial counsel for trial counsel's

3   failure to object to the trial court's corrective instruction

4   at the close of trial and his waiver of any corrections to the

5   jury instruction.

6           The defendant alleges that the corrective

7   jury instruction took from the jury the right to decide the

8   elements of the case.  In the present case, the Court's

9   corrective -- in this court's view, the trial court's

10  corrective instruction to the jury did not constitute a

11  finding of fact by the trial court in regard to the issue of

12  penetration, which effectively extinguished any factual

13  controversy.

14          It should be noted that in her opening

15  statement, the prosecutor stated to the jury that the

16  defendant placed his penis into the victim's mouth as well as

17  her vagina and place his mouth on her vaginal area.  The

18  victim testified that the defendant placed his penis in her

19  mouth.  In the closing argument, the prosecutor also argued

20  that the victim testified that the defendant placed his potty,

21  that is his penis, inside her mouth and she didn't like it.

22          During the instructions to the jury the

23  Court stated that the prosecutor's theory of the case was

24  sexual penetration by inserting his penis into her vagina or

25  anus and by placing his mouth and lips on her vagina.  There

9

1   was no mention of the act of him placing his penis in the

2   victim's mouth in spite of the victim's testimony to the

3   contrary.

4                  Upon completion of the instructions, a

5   side bar was held and the Court then gave a corrective

6   instruction as to the prosecution's theory of the case.  The

7   defendant objected to only one line of that instruction and

8   that being the words "... and it is also the People's theory

9   that and there is evidence to the fact that the defendant,

10   Mark Cleary, inserted his penis into Rachel's mouth."

11                That statement by the Court merely

12   corrected the Court's admission of one of the sexual acts on

13   which the prosecution's theory was based.  The Court correctly

14   pointed out that there was some evidence as to the commission

15   of that act and again defined what constitutes penetration,

16   which the prosecutor must prove beyond a reasonable doubt.

17                The Court finds that the corrective

18   instruction was not misleading.  The instruction did not

19   direct the jury to find the fact of fellatio but merely

20   pointed out that there was some evidence as to that act.

21   There was no imperative language in this instruction.  The

22   instruction was proper and not prejudicial.  The jury could

23   have concluded that there was no fellatio if the victim's

24   testimony was not credible.  Moreover, the appellate counsel

25   could have properly concluded that this issue was not a viable

1    issue.

2                She did raise the issue of ineffective

3    assistance of counsel and a Ginther hearing was held on

4    several of the alleged omissions. Moreover, appellate counsel

5    is barred from raising the corrective jury instruction issue

6    directly since counsel, by expression to the Court that there

7    were no corrections, waived the issue for appellate review.

8    Therefore, the defendant has failed to establish ineffective

9    assistance of appellate and trial counsel by failing to

10   overcome the strong presumption that counsel's actions

11   constituted sound trial strategy, nor has he established

12   sufficient prejudice on this issue.

13               The defense goes on to contend that

14   appellate counsel provided ineffective assistance of counsel

15   by failing to raise the issue of trial court or counsel's

16   failure to object to the prosecutor's closing arguments. The

17   defendant alleges that the prosecutor's statements calling the

18   defendant a liar and commenting that the victim's storied had

19   been inconsistent, shifts the burden of proof. It is, first

20   of all, noted that whether an instance of prosecutorial

21   misconduct exist is a question of whether or not the defendant

22   was denied a fair trial.

23               Appellate review of prosecutorial remarks

24   is generally precluded absent an objection because the trial

25   court was deprived of an opportunity to cure the error. Here,

11

1   there was no objection. Without an objection, an appellate

2   court will only read first if a curative instruction could

3   have eliminated the prejudicial effect of the remarks, or when

4   failure to review would result in a miscarriage of justice.

5        The fact the prosecutor called the

6   defendant a liar where the defendant has testified is not in

7   itself improper argument. The prosecutor may call the

8   defendant or the witnesses liars. The prosecutor is at that

9   point arguing the credibility of the witnesses. She may argue

10  the witness is not worthy of belief where their testimony

11  conflicts or arguably is incredible. The prosecutor is merely

12  arguing that the defendant is not worthy of belief.

13       There was no error in this court's view

14  and there was no prejudice. The Court cured any alleged error

15  by giving cautionary instructions that the lawyers' arguments

16  were not evidence. In light of those instructions, it cannot

17  be said that the jury did not know that the burden of proof

18  was solely on the prosecution. The prosecution in this case

19  did not suggest that she had any personal knowledge of the

20  facts, nor of the fact of facts not brought before the jury.

21  The use of the term "we know" or "I know" in discussing

22  evidence is not an expression of personal belief.

23       The Court finds the defendant was not

24  denied a fair trial based upon the prosecutor's statement

25  during the closing argument and counsel does not have to make

12

1   meritless objections or arguments. Moreover, the Court finds
2   that the defendant is not entitled to a Ginther hearing since
3   there are no factual issues to be resolved. Defendant has
4   already had a Ginther hearing and to hold another Ginther
5   hearing 14 years later poses an undue burden on the witnesses
6   to be called. The Court agrees with the prosecution's
7   position or argument that balancing the burden of conducting a
8   hearing against the likelihood of the success of the
9   defendant's claim, a Ginther hearing is unwarranted.
10          The Court now moves on to the issue of
11   the newly discovered evidence. The defendant has argues a
12   motion for a new trial based upon the recantation testimony of
13   the victim in this case. A motion for a new trial based upon
14   newly discovered evidence may be granted upon the showing
15   that:
16          (1) The evidence itself, not merely it's
17   materiality, is newly discovered; (2) the evidence is not
18   merely cumulative; (3) the evidence is such as to render a
19   different result probable on retrial; and (4) the defendant
20   could not with reasonable diligence have produced it at trial.
21          First, the new evidence is in the form of
22   a deposition of the complaining witness recanting her
23   statements, her trial statements. The Court finds that this
24   is newly discovered evidence. Approximately eight years
25   following the trial, the complainant in a deposition recanted

13

1   her trial testimony. The deposition testimony was furnished

2   both to the prosecution and to the Court as a part of the

3   motion. The Court has reviewed this testimony taken

4   August 27, 1997, wherein the complaining witness unequivocally

5   recants her trial testimony regarding sexual assault.

6                   The Court will not quote sections of this

7   testimony at length since it is a part of the attachment to

8   the pleadings, but there can be no doubt that it is directly

9   contrary to the testimony given at trial. I will just read a

10  portion thereof:

11                  "Q:  Do you recall during the trial of

12  Mark Cleary, do you recall testifying that Mark touched you in

13  the wrong way while you were living with your mother?

14                  "A:  Yes.

15                  "Q:  Was it true?

16                  "A:  No.

17                  "Q:  Why did you say that?

18                  "A:  We were at my mom's friend's house

19  and my mom's friend had a son. We were in the garage and

20  there were a bunch of dirty magazines there that I guess

21  belonged to his father. We were looking at them and then we

22  went to the back room. We didn't really do nothing. We just

23  kind of fooled around. My sister came in and seen us and told

24  her mom. My mom and her friend came in and took us out front

25  and put Brian, her son, in front of the TV so that he could

1   watch TV.  They took me into the dining room and started
2   hitting me with a paddle.  They kept asking me you know why I
3   did this.  And I was telling them, you know, why that we seen
4   the magazines, and they just kept hitting me with the paddle.
5   And then I said my daddy did it and that's all I said.  They
6   called my grandfather and everything came from that."
7                    The deposition goes on with great
8   specificity as to the recanting of the trial testimony and the
9   reasons for the recantation.  As I said, the deposition
10  testimony of the complainant directly contradicts her trial
11  testimony.  Moreover, the Court had the opportunity to view
12  the defendant testify at an evidentiary hearing held in this
13  court on July 29, '04, during which she gave testimony which
14  was consistent with her recantation in that meaning consistent
15  with her deposition testimony referred to above.  Moreover,
16  during the testimony, she explained the reason for giving the
17  deposition testimony.
18                   The Court it turns now to the nature of
19  the complainant's testimony at her deposition and hearing
20  testimony.  This testimony is not cumulative.  The Court
21  having gone through the trial transcript, which is rather
22  lengthy, has determined that in actuality the complainant was
23  the sole complaining witness in this case.  For all practical
24  purposes, after having reviewed the trial testimony, the Court
25  was struck by the fact that there was no conclusive physical

15

1   evidence of sexual abuse.  The examining doctor, Charles
2   Barron, chief of pediatrics at Ford Hospital Northeast,
3   testified that there were no specific findings correlated with
4   penetration present on exam of the victim.  Moreover, the
5   doctor testified that during the examination of the victim's
6   vaginal area, he did not find any scars or tears or anything
7   like that.

8           Further, he testified there was no proof
9   of penetration to the child's vaginal area.  And finally, the
10  doctor testified that the examination of the victim could be a
11  normal finding without sexual abuse.  Because in this case the
12  complainant's testimony provided the basis for the conviction,
13  and the victim now has recanted such statements, this coupled
14  with the fact that there is no conclusive physical evidence of
15  abuse, establishes that the newly discovered evidence is not
16  merely cumulative.

17          The Court further considered whether the
18  evidence is such to render a different result probable on
19  retrial.  The Court notes that the complainant was the sole
20  complaining witness in this case and there was a lack of
21  conclusive physical evidence of sexual abuse.  The Court is
22  also troubled by several other aspects of this case.  At the
23  time these allegation were -- these criminal allegations
24  surfaced, the complainant's parents were going through a
25  bitter custody battle.  Based on examination of the trial

16

transcript, it appears to this court that there existed a
hostile motive by the victim's mother directed at the
defendant as well as the victim's hostile motive in blaming
someone else to avoid getting into trouble.

As I said, at the time of the alleged
abuse, the defendant and the complainant's mother were
entrenched in a long custody battle, during which time Susan
Swhwarz denied the request by the defendant, Mark Cleary, for
visitation during the custody battle.  Further, the mother
made allegations that the defendant would kidnap the children
if he was allowed visitation.  That allegation was considered
and rejected by Referee James Connelly, who testified --
that's Macomb County Friend of the Court Referee James
Connelly -- who testified at the trial that he believed that
the kidnap threat was groundless and seemed to have -- "seemed
to have no basis in fact."

The complainant testified at the time that
she made the allegation of sexual abuse by Mark Cleary, she
was being spanked with a wooden paddle and screamed at by her
mother.  The complainant expressed, clearly expressed a
hostile motive in avoiding trouble by blaming the defendant.
As noted earlier, the complainant stated she was playing with
her friend Brandon under the bed and when asked what she and
Brandon were doing under the bed, the complainant testified
that she told her mother we were fooling around under the bed.

17

1  The complainant testified that her mother got upset and took a
2  wooden paddle and whipped her.

3              The complainant further testified that her
4  mother was screaming at her and that her mother kept screaming
5  at her and that she couldn't tell her anything.  In response,
6  the complainant testified that she told her mother that her
7  father had did this.  As a result, the complainant testified
8  that her mother stopped hitting her at that moment and sat
9  down and appeared ready to cry.

10             The Court also makes note of the fact that
11 the complainant in this case testified in a deposition, that
12 is, a statement made under oath, as well as having given sworn
13 testimony to this court in open court under oath, not only
14 without benefit of immunity but with the possibility of
15 criminal charges being brought.

16             In the instant case, the deposition
17 testimony and the hearing testimony, during that testimony the
18 victim refutes her prior testimony at trial, and as noted
19 there appears to be no physical evidence corroborating the
20 victim's testimony at trial.  The Court should say unequivocal
21 evidence corroborating the victim's testimony at trial because
22 the Court believe that there was some testimony from which
23 inferences, contrary inferences might be drawn.

24             In this case, then, the sole witness to
25 the allegation has recanted her testimony via deposition and

                                                              18

1   as a result lends further support to the possibility that
2   there would have been a different result at trial had she
3   testified at trial as she does now.  The Court is further
4   troubled by several aspects of this case.

5                    Although the Court's concerns were not
6   necessarily controlling in its decision, the Court wishes to
7   address those concerns just briefly.  The Court is troubled by
8   the conducting of mock trials with the complaining witness
9   before the trial of this case.  Those mock trials apparently
10  were conducted by the mother and a step -- I believe her
11  stepfather at that time as well as the interviewing techniques
12  which were employed in this case which appear to run contrary
13  to accepted forensic interviewing protocol.  These concerns
14  support the -- well, let me move on.

15                   It appears that the accepted protocol may
16  not have been followed during the investigative stage.  And,
17  again, I won't get deeply into those concerns, but the length
18  of the interviews, the fact that the interviewer had an
19  ongoing therapeutic relationship with the complainant appears
20  to be have been contrary to the forensic protocol.  Moreover,
21  it appears that the complainant's mother was playing court
22  with the complainant despite the detective's in charge of this
23  case directives not to do so.  Moreover, the Court was
24  concerned regarding the animosity shown by the complainant's
25  mother and one Donna Simon against Mark Cleary in front of the

1    complainant.

2                   The Court agrees that the existence of
3    this newly discovered evidence in the form of deposition
4    testimony as well as hearing testimony given by the
5    complainant denying that the crime ever took place is
6    compelling under the circumstances especially considering that
7    she is subject to be being charged with the crime of perjury.
8    Moreover, as the Court noted, this original charge was brought
9    against the backdrop of a bitter custody dispute with charges
10   having been brought regarding kidnapping by the victim's
11   mother against the defendant.

12                   Importantly, no conclusive physical
13   evidence of sexual assault was introduced and there does
14   appear to have been some inappropriately suggestive
15   interviewing techniques that increased the possibility or
16   likelihood of implanting false allegations into a child's
17   memory.

18                   Taking all of these things together, the
19   Court concludes that the defendant would have a reasonable
20   likelihood of acquittal.  Under these circumstances, the Court
21   has no alternative but to grant the motion for a new trial.
22   Please prepare an order to that effect.

23                   MR. RABAUT:  Thank you, your Honor.  Can I
24   address the Court on another issue?

25                   THE COURT:  Yes.

                                                              20

1   MR. RABAUT: Mr. Clearly, as I indicated

2   to the Court, is in the Michigan Department of Corrections.

3   I'm wondering if the court would do one of the two following

4   things: Either consider a bond motion right now, or in the

5   alternative, have Mr. Cleary writted here within the next

6   seven days and allow me to argue a bond motion at that time?

7   THE COURT: I will abide by the second,

8   the latter suggestion. We'll writ Mr. Cleary here. However,

9   it may -- Mr. Goodman, it may take more than seven days?

10   MR. GOODMAN: Probably. At least seven.

11   MR. RABAUT: Could we set it within seven,

12   Judge, and see if it can be expedited due to the findings from

13   the Court?

14   THE COURT: Unfortunately, I will not be

15   here. It has to be the first week of January.

16   MR. GOODMAN: One moment, your Honor.

17   (Brief pause)

18   MR. GOODMAN: May we approach, Judge?

19   THE COURT: Yes.

20   (At about 10:18 a.m., bench conference

21   held)

22   (Back on the record)

23   THE COURT: We'll address this matter

24   later on today and we'll move on to other matters right now.

25   MR. RABAUT: Thank you, Judge.

21

1          (Proceedings concluded)

2               *       *       *

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1   STATE OF MICHIGAN        )

2                            )        SS

3   COUNTY OF MACOMB         )

4

5                   CERTIFICATE OF NOTARY PUBLIC

6

7           I, Angela M. Little, Certified Court Reporter in the

8   State of Michigan, do hereby certify that the foregoing pages,

9   1 through 23, inclusive, comprise a full, true, and correct

10  transcript of the proceedings had in the matter of THE PEOPLE

11  OF THE STATE OF MICHIGAN, Plaintiff, versus MARK NORMAN

12  CLEARY, Defendant, Case No. 87-0925-FC, on Wednesday, December

13  14, 2004.

14
                                _Angela M. Little_
15

16                              ANGELA M. LITTLE - RPR, CSR-6444
                                Notary Public in and for the
17                              State of Michigan

18  DATED:  __3/1/05__

19

20

21

22

23

24

25

                                                                    23