NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0068n.06

No. 09-1441

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Feb 02, 2011

LEONARD GREEN, Clerk

MARK NORMAN CLEARY,                )
                                   )
        Plaintiff-Appellant,       )
                                   )
v.                                 )          ON APPEAL FROM THE
                                   )          UNITED STATES DISTRICT
COUNTY OF MACOMB, ET AL.,          )          COURT FOR THE EASTERN
                                   )          DISTRICT OF MICHIGAN
        Defendants-Appellees.      )
                                   )                 O P I N I O N
                                   )

BEFORE:     MOORE, GIBBONS, and McKEAGUE, Circuit Judges.

   **McKeague, Circuit Judge.**  Mark Norman Cleary was convicted in a state court in Michigan of sexually assaulting his daughter and spent sixteen years in prison.  After his daughter recanted her allegations, he moved for and was granted a new trial.  Prior to the start of the second trial, the government dismissed the charges against Cleary.  Cleary then filed the underlying lawsuit in federal court, pursuant to 42 U.S.C. § 1983, against various individuals and entities involved in the state investigation and his prosecution.  Cleary alleged violations of state law and his Fourth and Fourteenth Amendment rights.  After certain claims were dismissed pursuant to Cleary's concessions and dispositive motions were filed, the district court found that three defendants were entitled to qualified immunity.  The remaining defendants filed a motion for summary judgment, which the district court granted in a second order.  Cleary filed the instant appeal, raising numerous challenges

No. 09-1441
*Cleary v. County of Macomb, et al.*

to both of the district court's orders.  For the reasons that follow, we AFFIRM the district court's

orders.

## I.  BACKGROUND

**A. Factual History**

**1. Investigation**

Cleary's complaint sets forth the following facts.  In the early part of 1987, Cleary and his

former girlfriend, Susan Schwartz, were involved in a dispute in Macomb County, Michigan, over

Cleary's right to visitation with their two young daughters, Rachael, then age seven, and Kristi, then

age five.  Before the Macomb County Friend of the Court Referee could make a recommendation

in the case, Schwartz's mother, Donna Simon, called Macomb County Child Protective Services and

alleged that Cleary had sexually assaulted Rachael approximately one year before, in February 1986.

Child Protective Services assigned the case to Macomb County social worker Nancy Szlezyngier,

who contacted Schwartz and visited Schwartz, her husband Gary, Simon, Rachael, and Kristi at their

home shortly thereafter.  Szlezyngier interviewed both Rachael and Kristi, and provided them with

anatomically correct dolls in order to have them demonstrate any sexual abuse, though neither girl

was responsive to the dolls.  However, Rachael did tell Szlezyngier that Cleary had touched her

"potty" with his hands and mouth, that this had occurred while she was in bed with Cleary and Kristi,

and that Kristi was not touched by Cleary.  Szlezyngier also learned that Rachael had told Schwartz

about the alleged abuse after watching a cartoon about strangers.

Following this visit, Szlezyngier contacted Warren Lamb, a detective with the Macomb

County Sheriff's Department, and informed Lamb that Schwartz wanted to have Cleary prosecuted

No. 09-1441
*Cleary v. County of Macomb, et al.*

for the alleged abuse. Lamb attempted to contact Schwartz on various occasions, but received no response. Szlezyngier also filled out a form with the Macomb County Child Sexual Abuse Trauma Team ("CSATT") to request its services in the matter, noting that Kristi also told Schwartz that Cleary had sexually assaulted her. Additionally, Szlezyngier contacted social worker Therese L. Wolf and informed her about the case, indicating that it was difficult because of the "apparent animosity" held by Simon and Schwartz for Cleary, which had been expressed in front of the children.

Wolf then made her own visit to the Schwartz home, meeting with Schwartz, Gary Schwartz, Rachael, and Kristi. During her visit, Wolf learned that Schwartz and Cleary had a "rocky" relationship; that Cleary had been abusive towards her and the children while they had been living together; and that Cleary had recently stopped making child support payments. Schwartz also told Wolf that a year after the alleged abuse, she had caught Kristi and the young son of a friend in bed together with their clothes on, "each touching their private areas." With regard to the specific abuse allegations, Rachael stated that she (Rachael), Kristi, and a man named Jack Swanger were all in bed together on the night of the alleged abuse, and that Kristi was asleep when Swanger had touched Kristi's "potty." Rachael also stated that Cleary made her perform fellatio on him, and that Cleary performed cunnilingus on her "with penile penetration." Rachael told Wolf that Swanger had done the same thing to her on the night of the alleged abuse. As Szlezyngier had done only a week earlier, Wolf brought anatomically correct dolls and, on this visit, Rachael was able to do "a very complete and thorough job of demonstrating exact, precise positions" with the dolls. The entire interview lasted only half an hour, and it was the only time Wolf spoke to Rachael about the incident. Wolf

No. 09-1441
*Cleary v. County of Macomb, et al.*

contacted Szlezyngier after the interview and relayed the information she obtained over the phone, and Szlezyngier indicated that she would pass it on to Detective Lamb.

About a week after his initial phone call, Schwartz called Lamb to set up an appointment to come in that day to discuss the incident at the Sheriff's Department, though Schwartz canceled the meeting before it took place. Instead, Lamb and Schwartz discussed the matter over the phone, and Schwartz told Lamb that she ended her relationship with Cleary after numerous assaults on her took place in January 1986 and that their relationship was generally tumultuous. Schwartz also stated that she had discovered Rachael, Kristi, and some other children playing "doctor" at a friend's house, and that when scolded for doing so, Rachael replied that "daddy does it." Being alerted to the possibility of sexual abuse, Schwartz had a discussion with Rachael, who said that Cleary took Rachael and Kristi into bed with him and then put his face in Rachael's "private spot and used his fingers on her." Rachael told Schwartz that she had not mentioned the incident earlier because she did not think anything was wrong with it until she saw a cartoon at Schwartz's friend's house. She also stated that similar incidents had occurred prior to that one, before Schwartz had left Cleary, and also that Jack Swanger and Kevin McCarthy, both friends of Cleary, had "us[ed] their fingers on her." Schwartz indicated to Lamb that Cleary was attempting to gain custody of the girls and stated that she wanted to see him prosecuted for the alleged abuse, though she did not mention prosecution of either McCarthy or Swanger. Although Schwartz scheduled a time to come in to discuss the matter with Lamb in person, that meeting never took place.

A few weeks later, Wolf began individual counseling sessions with Rachael. During one of these sessions, Wolf talked with Rachael about testifying in court, and Rachael stated that she was

No. 09-1441
*Cleary v. County of Macomb, et al.*

afraid of going to jail if she made a mistake. Around this same time, Wolf contacted Szlezyngier and told her that there were communication problems between Rachael, Schwartz, and Simon. Szlezyngier then wrote a letter to Lamb, informing him of the information given to her by Rachael during her interview and indicating that she would continue to assist him in the investigation. Szlezyngier also completed an investigation report, in which she stated that Schwartz was adamant that Cleary be prosecuted for his actions, but that the charges being pursued were only against him and not against the others, despite the fact that Rachael had told her that Swanger had done the same things to her that Cleary did and had touched Kristi. Szlezyngier also expressed concern that the allegations had been made due to the ongoing custody battle between Schwartz and Cleary, and she included the name of the judge, the name of the friend of the court assigned to the case, and the case number, but stated she had not contacted Cleary, as that would be done by Lamb. Only two days after drafting the report, Szlezyngier then stated that there was no need for juvenile court intervention.

A few weeks after beginning their counseling sessions, Rachael gave Wolf a note that said that Cleary "squirted 'semen' on Rachael's candy," which was information that she had previously forgotten to tell Wolf. A few days later, Lamb was finally able to meet with Rachael, Schwartz, and Simon at Schwartz's home. Lamb's notes from the meeting reflect that Rachael was "hyperactive and silly and extremely shy" and that she "expressed a lack of ability to relate the events of the incident." Lamb did learn, however, that on the day the alleged abuse took place, Rachael had gone to Cleary's mother's house and Cleary had picked up her and Kristi and taken them to his home. That evening, the three were watching television on the couch; Rachael was wearing only a tee shirt

No. 09-1441
*Cleary v. County of Macomb, et al.*

and underwear, and Cleary was wearing underwear only. Kristi had fallen asleep and Cleary, who had been drinking soda but then started drinking beer, gave Rachael a candy bar that he had "squirted his penis on." Rachael stated that she did not want it, but Cleary forced her to eat it. Rachael informed Lamb that Cleary took off his underwear and "touched her down there," indicating on the doll and calling it her "potty." Rachael also stated that Cleary had put his "'potty' into her mouth and into her 'potty,'" that he had "put his 'potty' also in her rectum area," and that he threatened to kill her, Kristi, and Schwartz if she told anyone about what he had done. Rachael stated that Cleary had assaulted her on six separate occasions, and that on two of those occasions Swanger and McCarthy also assaulted her.

A few days later, Rachael spoke with Wolf and Simon, and they discussed how Rachael, Schwartz, and Gary Schwartz had "played court," and how Rachael felt that she had to testify because Schwartz wanted her to do so. Wolf and Simon told Rachael that if she did go to court, Cleary "could get help." Wolf spoke with Lamb the next day, and Lamb stated that Rachael was a weak witness. Lamb also told Wolf that he did not want Schwartz "playing Court" with Rachael, and he asked Wolf to tell Schwartz to discontinue that behavior.

The next day, Kathleen Beard of the Macomb County Prosecutor's Office sought an arrest warrant for Cleary, which was issued five days later by a judge of the district court. Schwartz was listed as the complaining witness, and she had signed the felony complaint. Two days after the arrest warrant issued, Szlezyngier received a report from Dr. Charles J. Barone, who had performed a physical examination on Rachael. The report stated that Rachael's genital examination was "abnormal," and that "[h]er hymenal opening is 8-10 mm and hymenal membrane is absent on the

- 6 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

superior aspect. Normally at this age a child's opening is 4 mm and the hymen is usually intact." The report concluded that this was "consistent with the history that the child gives." That same day, Lamb attempted to contact the friend of the court assigned to the Schwartz/Cleary custody dispute, but he was only able to leave a message.

### 2. Arrest and Trial

On April 27, 1987, approximately two months after the initial allegations of abuse were made and while he was at the Macomb County Circuit Court for the scheduled hearing on visitation, Cleary was arrested for criminal sexual conduct in the first degree. The next day, Prosecutor Beard met with Wolf, Rachael, and Simon, at which time Rachael stated that she did not want to go to court and "was being compelled to do so." A few days later, Rachael also told Simon, who then told Wolf, that she did not want to go back to Schwartz's home and that she wanted "to tell the Judge about" Schwartz and Cleary. Rachael also refused to talk any further about the incident during her counseling sessions with Wolf. A psychological evaluation was conducted on Rachael pursuant to a referral by Macomb Family Services, Inc., a non-profit corporation that provides outpatient community-based mental health services, and Macomb County Protective Services. Dr. Norman P. Dwaihy conducted the evaluation, and he stated in his resulting report that Rachael said only that she had been sexually abused by Cleary one year prior, but did not mention anyone else; Rachael had a great deal of fear about her environment and a mistrust of adults; she felt guilt and self-blame; and she was "hurt, angered, and confused by her mother's rejection of her."

Following a preliminary hearing on June 8, 1987, at which Schwartz and Rachael testified, a district court judge bound over Cleary to the circuit court for trial on a charge of criminal sexual

No. 09-1441
*Cleary v. County of Macomb, et al.*

conduct in the first degree. The trial began on January 11, 1989, and Schwartz, Rachael, Barone, Szlezyngier, Wolf, Simon, Dwaihy, and Lamb all testified. Rachael testified that Cleary had touched her "private spots" and had hurt her, that he had used his fingers to touch her "potty" but that she did not remember touching Cleary's "potty," that Kristi was not in bed with her and Cleary when the alleged abuse took place, that she did not remember saying "daddy does it to me," and that she calls her vaginal area her "private spot" and not "potty."

Barone testified that he had received a call from either protective services or Macomb Family Services regarding Rachael, and that his examination of her "fell out of range of normal." Although he found no scars or tears, he testified that hymen openings range from four to seven millimeters, and that Rachael's opening was between eight and ten millimeters. However, he also added that "actual size openings are hard to correlate to sexual abuse," and that ten millimeters was not proof of sexual abuse. He stated that there were no specific findings highly correlated with penetration, the examination could be considered normal, and no conclusion could be made based on Rachael's results. Szlezyngier testified that she was responsible for initiating the investigation and relayed the details of her interview with Rachael. She further testified that motive should be looked at when allegations of sexual abuse are brought during a custody dispute, but she stated that there was never an independent investigation regarding the dispute between Schwartz and Cleary. She also testified that she had only interviewed Rachael once for thirty minutes and that she never attempted to speak with Cleary.

Wolf testified that she was a therapist with CSATT, and that although she was part of the Cleary investigation, she had only discussed the specifics of the incident with Rachael once. She

- 8 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

also testified that she had considered the custody dispute and Sexual Allegations in Divorce Syndrome, but that it was nowhere in her notes. Finally, she stated that she only obtained history pertaining to the alleged incident from Schwartz. Lamb also testified, stating that he only spoke with Rachael once, that the warrant for Cleary's arrest was sought prior to the results of the physical examination by Barone, and that he was aware of the custody dispute but had not reviewed the friend of the court file. At the conclusion of the trial, the jury found Cleary guilty.

### 3. Exoneration

On August 27, 1997, Rachael provided a sworn statement and testified under oath that she had told Schwartz that the allegations against Cleary were not true; that Cleary never touched her in any improper or sexual manner; that Schwartz had put the idea into her head and that she had seen images in magazines that helped her concoct the story; that Cleary had never threatened her; and that she was scared of Schwartz and Simon. Cleary filed a motion for a new trial, which was granted on December 14, 2004, on the basis of Rachael's statement; Barone's testimony at Cleary's trial that there was no conclusive physical evidence of sexual abuse; the existence of the custody dispute between Schwartz and Cleary; the appearance of a hostile motive by Schwartz; prior false allegations made by Schwartz; the mock trials conducted by Schwartz and Simon with Rachael; the use of suggestive interviewing techniques with Rachael that were "contrary to accepted forensic interviewing protocol"; Wolf's "therapeutic relationship" with Rachael, which was also contrary to forensic protocol; and Schwartz and Simon's animosity towards Cleary. However, before a new trial could take place, the government requested that the court dismiss the charges against Cleary, which the court did on February 2, 2005.

No. 09-1441
*Cleary v. County of Macomb, et al.*

**B. Procedural History**

In December 2006, Cleary filed a complaint in the United States District Court for the Eastern District of Michigan, pursuant to 42 U.S.C. § 1983 and § 1988, alleging violations of his Fourth and Fourteenth Amendment rights by numerous defendants involved in the investigation and prosecution. Specifically, Cleary sued: (1) the County of Macomb, Michigan; (2) Macomb Family Services, Inc.; (3) Henry Ford Health System; (4) Detective Lamb; (5) Wolf; (6) Szlezyngier; (7) Dr. Barone; and (8) Schwartz (collectively "Defendants"). The complaint raised ten claims. Counts I and II alleged violations of Cleary's Fourth and Fourteenth Amendment rights and violations of 42 U.S.C. § 1983, respectively, by defendants Lamb, Wolf, Barone, and Szlezyngier, when they investigated, arrested, incarcerated, and prosecuted Cleary. Counts III through V alleged false arrest, false imprisonment, and malicious prosecution by Lamb, Wolf, Barone, and Szlezyngier. Counts VI and VII alleged intentional and negligent infliction of emotional distress; Count VIII alleged "gross negligence" by Lamb, Wolf, Barone, and Szlezyngier; Count IX alleged municipal liability on the part of Macomb County, Macomb Family Services, Inc., and Henry Ford Hospital due to a "pattern of constitutional violations" by their employees; and Count X alleged abuse of process by Schwartz. Cleary sought compensatory and punitive damages, costs and attorney's fees against all defendants, and injunctive and declaratory relief against Macomb County, Macomb Family Services, Inc., and Henry Ford Hospital.

Barone and Henry Ford Health System filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Cleary's claims were barred by the statute of limitations, that Barone was entitled to absolute immunity, that there was no duty owed to Cleary,

No. 09-1441
*Cleary v. County of Macomb, et al.*

that Cleary failed to state a claim for malicious prosecution, that Cleary failed to comply with applicable medical malpractice laws, and that Henry Ford Health System could not be vicariously liable for the intentional torts allegedly committed by Barone. Szlezyngier also filed a motion to dismiss for failure to state a claim, arguing that Cleary's claims were not filed within the statute of limitations, that Szlezyngier was entitled to absolute and qualified immunity, and that Cleary had failed to establish the necessary elements for his claims. Macomb County and Lamb filed what was captioned as a motion for summary judgment but raised claims properly brought in a motion to dismiss, arguing that Cleary's claims should be dismissed because he failed to state a claim for relief, because Lamb was entitled to qualified immunity, and the County was entitled to "governmental immunity." Macomb County Family Services, Inc. also filed a motion to dismiss the complaint, arguing too that it was time-barred and that Cleary had failed to state a claim under Rule 12(b)(6).[1] Wolf similarly filed a motion to dismiss, asserting that Cleary's claims were time-barred, that she was entitled to absolute and qualified immunity, and that Cleary had failed to state a claim on which relief could be granted.

Following a May 8, 2007 motions hearing, the district court issued its first opinion and order resolving the motions to dismiss brought by defendants Barone and Henry Ford Health System, Szlezyngier, Macomb County and Lamb, and Wolf. *Cleary v. County of Macomb, et al.*, No. 06-15505 (E.D. Mich. Sep. 6, 2007) ("*Cleary I*"). At the motions hearing, Cleary agreed to dismissal of the only state law claims against Defendants, Counts VI and VII for intentional and negligent

---

[1]Before the court could hold the motions hearing and rule on the motion to dismiss, Cleary agreed to dismiss without prejudice the complaint in its entirety as to Macomb Family Services, Inc.

- 11 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

infliction of emotional distress, and admitted that Counts V and VIII were not separate state claims, but rather summarized and described some of the relevant conduct by Defendants as it pertained to Cleary's alleged constitutional claims in Counts I, II, and IX. *Id.* at 13–14.  Cleary  also conceded that his claims of false arrest and false imprisonment were time barred and agreed to dismiss Henry Ford Health System as a defendant. *Id.* at 14.  Accordingly, the district court dismissed Counts III, IV, VI, VII and Henry Ford Health System as a party, and "limit[ed] its analysis to the remaining claims Defendants' [sic] [sought] to dismiss and construe[d] Counts V and VIII of [Cleary's] Complaint not as a separate state causes of action, but as causes of action inclusive in Counts I, II, and IX." *Id.*

The district court then addressed the untimeliness of some of Cleary's claims, Defendants' claimed entitlement to absolute and qualified immunity, and Cleary's alleged failure to state a claim. First, construing Cleary's complaint as raising claims of malicious prosecution, the court found that Cleary had timely filed his complaint. *Id.* at 15–16.  The court also determined that defendants Barone, Szlezyngier, and Wolf were not entitled to absolute immunity. *Id.* at 18–19.  However, the court determined that Cleary's complaint failed to allege facts to demonstrate that Barone acted under color of state law, a necessary element of a § 1983 claim, and dismissed Barone as a defendant. *Id.* at 19–24.

With regard to qualified immunity, the district court found that Cleary had failed to state a claim for deprivation of his constitutionally protected liberty interest in familial association against any Defendants and dismissed that claim in its entirety. *Id.* at 27.  It also concluded that Cleary had not alleged facts to show that Barone, Szlezyngier, or Wolf had violated Cleary's Fourteenth

- 12 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

Amendment right to due process or his Fourth Amendment rights, as encompassed in his malicious prosecution and continued detention without probable cause claims, and thus these defendants were entitled to qualified immunity and were dismissed from the action. *Id.* at 28–36, 43. However, although the court determined that the facts alleged did not support a Fourteenth Amendment claim against Lamb for fabrication of evidence, it did find that the facts were sufficient to state a claim that Lamb had violated Cleary's Fourth and Fourteenth Amendment rights for withholding exculpatory evidence, and that these rights were clearly established, such that Lamb was not entitled to qualified immunity at that stage of the proceedings. *Id.* at 36–38. Finally, the court determined that Cleary had plead sufficient facts to survive Macomb County's motion to dismiss pursuant to Rule 12(b)(6). *Id.* at 39–42.

Shortly after the court issued its opinion and order, Cleary voluntarily dismissed defendant Schwartz without prejudice, pursuant to Federal Rule of Civil Procedure 41(b). Macomb County and Lamb, the only remaining defendants, then filed a joint motion for summary judgment, arguing that Lamb had not withheld any evidence from the Macomb County prosecutor, and that the county itself was not liable because Cleary failed to show any "specific deficiency in the County's policies" or show how such a deficiency violated Cleary's rights. After extensive discovery, Cleary filed a response in opposition, asking the court to deny the motion because there remained genuine issues of material fact regarding the objective reasonableness of Detective Lamb's decision to seek authorization of a warrant to arrest Cleary, and regarding Lamb's withholding of "material exculpatory and impeaching facts and materially misrepresenting these critical facts." Cleary also argued that Lamb was not entitled to qualified immunity and that Macomb County was not entitled

No. 09-1441
*Cleary v. County of Macomb, et al.*

to summary judgment because questions of fact remained regarding the County's custom, policy and practice of allowing officers to approve their own warrant requests and not overseeing its detectives.

On March 24, 2009, the district court issued a second opinion and order, in which it resolved Macomb County and Lamb's motion for summary judgment, as well as motions to strike exhibits from the various pleadings. *Cleary v. County of Macomb and Warren Lamb*, No. 06-15505 (E.D. Mich. March 24, 2009) ("*Cleary II*"). First, the court determined that although "the finding of probable cause could have gone either way," the court could not conclude "that Lamb knew or should have known that [Cleary] was innocent." *Id.* at 12. Thus, Lamb's conduct did not cause Cleary to be detained without probable cause, and Lamb was entitled to summary judgment on Cleary's Fourth Amendment claim. *Id.* at 8–12.

The court also found that Lamb was entitled to summary judgment on Cleary's Fourteenth Amendment claim because the evidence challenged by Cleary was not actually withheld by Lamb, not within Lamb's actual knowledge, or not favorable or materially exculpatory for Cleary. *Id.* at 12–18. Finally, the court found that because Cleary had failed to establish a violation of his constitutional rights, his claim against Macomb County must also fail. *Id.* at 18–19. Accordingly, the court granted summary judgment in favor of both Lamb and Macomb County, and because it did not need to rely on any of the opposed exhibits, it denied all motions and requests to strike accompanying exhibits as moot. *Id.* at 19. Cleary then filed a timely notice of appeal.

## II. ANALYSIS

No. 09-1441
*Cleary v. County of Macomb, et al.*

This case spans several decades, implicates a number of parties, and involves complex and somewhat disturbing allegations. Yet, Cleary does little to present a clearer picture for this court on appeal. In his brief to this court, Cleary asserts that he is raising the following five claims:

> 1. Whether an alleged child victim's statements are sufficiently reliable to establish probable cause, where an investigating arm of the prosecution turns a blind eye and withholds potential exculpatory and/or impeaching evidence in order to put a case together and pin a crime on a potential suspect?;
>
> 2. Whether a private actor, operating as an agent of law enforcement and as a member of the prosecution team, while conducting a criminal investigation, is acting under the color of law?;
>
> 3. Is a member of the prosecution's team protected by qualified immunity when that member withholds and/or misrepresents potential exculpatory or impeaching evidence from the prosecutor and Court?;
>
> 4. Whether it was appropriate for the District Court to exclude affidavits timely filed by Plaintiff-Appellant in opposition to a motion for summary judgment?;
>
> 5. Whether it was appropriate for the District Court to grant summary judgment without permitting Plaintiff-Appellant to conduct further pertinent discovery?

A review of the parties' briefs, the district court record, and the orders from which Cleary appeals reveal that Cleary is essentially raising the following four challenges: (1) whether the district court properly granted Barone, Szlezyngier, and Wolf's motions to dismiss; (2) whether the district court properly granted summary judgment in favor of Lamb and Macomb County; (3) whether the district court erred in not considering three affidavits submitted by Cleary with his response in opposition to Lamb and Macomb County's motion for summary judgment; and (4) whether the district court erred in not permitting Cleary to engage in additional discovery. Accordingly, we address these four issues in turn.

- 15 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

Following Cleary's concessions at the hearing on the motion to dismiss, the district court determined that Cleary's complaint properly raised the following claims against Szlezyngier, Wolf, Barone, and Lamb: (1) continued detention without probable cause, in violation of the Fourth Amendment; (2) failure to disclose exculpatory impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and the Fourteenth Amendment; and (3) fabrication of evidence, in violation of the Fourteenth Amendment. In *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), this court held that where a plaintiff alleges that he was detained without probable cause, such a claim is not one for malicious prosecution (though such a claim may still be raised, as we explained in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010)), but instead one for "continued detention without probable cause" in violation of the Fourth Amendment. *Id.* at 747–48. Citing to the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994), and this court's decision in *Spurlock v. Satterfield*, 167 F.3d 995, 1006–07 (6th Cir. 1999), the court in *Gregory* explained that no new constitutional right was created, but rather that the cause of action was being "restyled" from a Fourteenth Amendment claim to one pursued under the Fourth Amendment, and should be analyzed accordingly. *Gregory*, 444 F.3d at 748–50; *see also Pitt v. District of Columbia*, 491 F.3d 494, 510–11 (D.C. Cir. 2007) (summarizing cases from and joining with the majority of circuits that held "that malicious prosecution is actionable under the Fourth Amendment to the extent that the defendant's actions cause the plaintiff to be 'seized' without probable cause"). Moreover, this applies to other individuals working for the police, and not just law enforcement officials. *See Gregory*, 444 F.3d at 749 n.11 (holding that a forensic examiner "in the employ of the state police" could be liable in a claim for continued detention without probable cause).

No. 09-1441
*Cleary v. County of Macomb, et al.*

*Gregory* also made clear that, even if a plaintiff's continued detention claim asserts that the lack of probable cause was the result of the suppression of exculpatory evidence, as Cleary alleges here, the plaintiff may also bring a separate Fourteenth Amendment claim alleging a *Brady* violation for suppression of that same evidence, because "[t]he *situs* of injury is distinct." *Id.* at 750. With a continued detention claim, a plaintiff's Fourth Amendment right to be free from unreasonable seizure is allegedly violated, whereas with a *Brady* claim, a plaintiff's right to a fair trial under the Fourteenth Amendment is violated. *Id.* Thus, Cleary may properly bring both a Fourth and Fourteenth Amendment claim alleging a failure to disclose exculpatory evidence. *See id.* Additionally, we have held such a claim is not limited to prosecutors, and that "the due process guarantees recognized in *Brady* also impose an analogous or derivative obligation on the police." *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009).

Finally, "[i]t is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Gregory*, 444 F.3d at 737 (citing *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)). Thus, the district court correctly determined that Cleary had raised a proper constitutional claim under the law in this circuit. However, neither in the district court nor on appeal has Cleary once asserted that any of the remaining defendants fabricated evidence, instead raising only claims of *Brady* violations by withholding exculpatory evidence, so we need not address this fabrication claim.[2] Accordingly, we must determine whether the district

---

[2]Cleary did make conclusory allegations in the district court that Barone had fabricated evidence, but he does not raise this claim on appeal.

- 17 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

court was correct in finding that Cleary had not alleged facts sufficient to state a violation of his constitutional rights by Szlezyngier, Wolf, and Barone, and whether or not Lamb and Macomb County were entitled to summary judgment on these two remaining claims. *See Roberts v. Ward*, 468 F.3d 963, 967 (6th Cir. 2006) ("Because the district court addressed the various claims in separate orders, one addressing the pleadings and the second at the summary judgment stage, we must evaluate each claim in light of the procedural posture under which it was dismissed.").

**A. Motion to Dismiss:**

Cleary first challenges the district court's September 6, 2007 order dismissing all claims against defendants Szlezyngier, Wolf, and Barone because Cleary had not pled facts sufficient to find that those defendants violated his constitutional rights, and therefore they were entitled to qualified immunity. As noted, Cleary filed his complaint pursuant to 42 U.S.C. § 1983, which requires that he establish "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010). Szlezyngier, Wolf, and Barone all filed motions to dismiss pursuant to Rule 12(b)(6) arguing, inter alia, that they were not liable because they were entitled to qualified immunity, and the district court agreed.

It is well-established that "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The protection afforded to government officials entitled to qualified immunity "applies regardless of

- 18 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks omitted). To determine whether a government official is entitled to qualified immunity, this court undertakes a two-step inquiry to determine if (1) the defendant violated a constitutional right, and (2) if that right was clearly established.[3] *See Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). However, we are no longer required to undertake this inquiry in the sequential order established in *Saucier v. Katz*, 533 U.S. 194 (2001), and instead we may "exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818.

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). In conducting this review, "we construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Id.* Additionally, claims of entitlement to immunity are questions of law, therefore they too are reviewed *de novo*. *See Barnes v. Wright*, 449 F.3d 709, 714 (6th Cir. 2006).

---

[3]This court also has developed a three-part test that is sometimes used when reviewing decisions regarding qualified immunity. *See Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010) (stating that, when undertaking the qualified immunity analysis, this court must determine (1) whether a constitutional violation has occurred, (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known," and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights").

- 19 -

No. 09-1441
Cleary v. County of Macomb, et al.

Although many pages of his brief are spent challenging the findings made by the district court in its order granting Lamb and Macomb County's motion for summary judgment, Cleary spends little time addressing the district court's determinations regarding qualified immunity as to defendants Szlezyngier, Wolf, and Barone. However, regardless of the arguments presented in his brief as to his claims against these defendants, counsel for Cleary conceded at oral argument that "every single piece of information that every other one of these investigatory team members had" was actually in Lamb's possession.[4] Thus, by Cleary's own admission, he has no constitutional claim against any of these defendants, because both his Fourth Amendment continued detention without probable cause and Fourteenth Amendment *Brady* claims were based on allegations that these defendants

---

[4]Cleary does attempt to raise an argument regarding an alleged failure by Szlezyngier and Wolf to disclose a 1988 report regarding allegations of physical abuse of Rachael by Schwartz and Gary Schwartz. However, as Cleary conceded at oral argument, this claim was not raised in his complaint or his responses to Szlezyngier or Wolf's motions to dismiss. Rather, Cleary raised this claim for the first time in his response to Lamb and Macomb County's motion for summary judgment, which was filed after Szlezyngier and Wolf were dismissed as defendants. Accordingly, this claim as to these two defendants is not properly before this court on appeal. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006) (explaining that this court "should not assume facts that were not pled," and that "[t]he appropriate method for adding new factual allegations to a complaint is not via an appellate brief, but by filing an amended complaint").

No. 09-1441
*Cleary v. County of Macomb, et al.*

withheld information from Lamb or the prosecutor.[5]  Accordingly, these defendants are entitled to

qualified immunity, and  the district court properly granted their motions to dismiss.[6]

## B. Summary Judgment:

Cleary also challenges the district court's grant of summary judgment in favor of Lamb and

Macomb County.  "We review a district court's grant of summary judgment de novo and draw all

reasonable inferences in favor of the nonmoving party." *Branham v. Gannett Satellite Info. Network,*

*Inc.*, 619 F.3d 563, 568 (6th Cir. 2010).  Summary judgment is appropriate where "the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see also Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 635

---

[5]Although his brief alleged only that Barone withheld information, at oral argument Cleary's counsel argued that Barone misrepresented information obtained from his examination of Rachael. Specifically, counsel argued that Barone stated in his report that the exam was consistent with abuse, but later testified that the findings were not conclusive.  Yet, Cleary's complaint establishes that Barone completed his report after the arrest warrant was issued.  As the report was not relied on in finding that probable cause existed,  Barone could not have violated Cleary's Fourth Amendment rights.  Moreover, to the extent Barone's trial testimony was inconsistent with his original report, Cleary has not shown that this evidence was material to a finding of his guilt.  *See Sykes*, 625 F.3d at 320.  In fact, Barone's trial testimony regarding the inconclusive nature of the examination was relied on in part by the court in granting Cleary's motion for a new trial.

[6]Additionally, we note that the district court also properly concluded that Barone was entitled to dismissal of the complaint because he was not acting under the color of state law.  Cleary alleged on appeal only that Barone's actions constituted a public function because investigating criminal allegations of child abuse is a function typically attributed to the state.  *See Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (explaining that "[u]nder the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state"). However, Cleary has undertaken no "historical analysis" to support his claim and, as this court has previously held, "[c]onsidering that plaintiff bears the burden on this issue, this failure alone renders this test inapplicable." *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003).  Therefore, the district court correctly determined that Barone was not acting under color of law and could not be liable pursuant to § 1983.

No. 09-1441
*Cleary v. County of Macomb, et al.*

(6th Cir. 2010). "A genuine issue of material fact exists when, 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). However, the non-moving party must present some evidence to show a genuine issue for trial exists. "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 476 (quoting *Anderson*, 477 U.S. at 249–50) (internal quotation marks omitted).

**1. Lamb:**

At the summary judgment stage, Cleary had two claims remaining against Lamb: (1) a Fourth Amendment claim alleging continued detention without probable cause, and (2) a Fourteenth Amendment claim alleging a *Brady* violation that prevented Cleary from receiving a fair trial, both due to Lamb's failure to disclose evidence. In the motion for summary judgment, Lamb again argued that he was entitled to qualified immunity. As noted, a government official is immune from civil liability unless, in the course of performing his discretionary functions, he violates the plaintiff's constitutional right and that right was clearly established. *See Aldini*, 609 F.3d at 863. Accordingly, if Cleary cannot demonstrate that Lamb violated his constitutional rights, Lamb is immune from liability.

In finding that Cleary failed to state a Fourth Amendment claim for continued detention without probable cause as a result of withholding evidence, the district court stated that while it "share[d] in Plaintiff's concerns regarding the credibility of Rachael's allegations in light of all the facts and circumstances," Lamb was entitled to discretion in analyzing Rachael's allegations and that

- 22 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

he had probable cause to pursue the charges against Cleary. *Cleary II*, at 11–12. The court stated

that, "at worst . . . the finding of probable cause could have gone either way," but that because Lamb

did not know nor should have known that Cleary was innocent, Cleary failed to demonstrate that his

Fourth Amendment rights were violated. *Id.* at 12. Although the court correctly concluded that

Cleary's Fourth Amendment rights were not violated, the issue is not whether there was probable

cause based on the information presented to the prosecutor and ultimately to the court, but whether

evidence withheld by Lamb that otherwise should have been disclosed would have "dissolved"

probable cause.[7] *See Gregory*, 444 F.3d at 750. For there to be probable cause for an arrest, "the

facts and circumstances within the officers' knowledge must be sufficient to warrant a man of

reasonable caution to believe that an offense had been, was being, or was about to be committed."

*Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007). However, "[a] finding of probable cause does not

require evidence that is completely convincing or even evidence that would be admissible at trial;

all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the

arrestee has committed or is committing a crime." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.

2008). In other words, there must be more than "[a] mere suspicion of criminality." *Id.*

With regard to his Fourteenth Amendment claim, the district court held that all of the

evidence allegedly withheld by Lamb was "either not withheld by Lamb, not within Lamb's actual

knowledge, or not favorable or materially exculpatory" for Cleary. *Cleary II*, at 12–18. The district

---

[7]We may nevertheless affirm the district court's grant of summary judgment. *See Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 677 (6th Cir. 2005) (finding that, although the district court did not separately analyze the issue relied upon by this court to affirm, this court "of course may affirm on a ground not relied upon by the district court").

No. 09-1441
*Cleary v. County of Macomb, et al.*

court properly explained that, when bringing a *Brady* claim alleging that exculpatory evidence was withheld, the plaintiff bears "the burden of establishing that the prosecutor suppressed evidence," that the evidence was favorable to the defense, and that it was material, meaning that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Warshak*, No. 08-3997, –F.3d–, 2010 WL 5071766, at *24 (6th Cir. Dec. 14, 2010); *see also Kyles v. Whitley*, 514 U.S. 419, 432 (1995). Because Cleary asserts that withholding of the same pieces of evidence violated both his Fourth and Fourteenth Amendment rights, our analysis will address both claims together.

On appeal, although Cleary asserts that Lamb "never reported over twenty-one (21) essential pieces of the puzzle to the prosecutor," he ultimately argues that only five specific pieces of evidence were improperly withheld or misstated by Lamb, resulting in a violation of his Fourth and Fourteenth Amendment rights. First, Cleary argues that Lamb improperly withheld allegations that Kristi had been sexually abused as noted in two specific documents: an intake sheet from protective services and a CSATT Request for Services form. However, Cleary does not argue that this information would have dissolved probable cause. And, in fact, there is nothing in the record to suggest this would be the case. Although the protective services intake sheet states that the information contained therein (including that Kristi had been abused) was told by the "oldest girl" to "the mother," Schwartz, the intake form was filled out on the basis of a phone call to protective services made by Simon, Schwartz's mother, and not either of the two individuals who allegedly exchanged this information. Cleary also references the CSATT Request for Services form, which states that "Kristi told mom that Mark also touched her." Yet, as Cleary's own complaint recognizes, Kristi

- 24 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

herself never stated that she had been subject to abuse. The existence of a note made on the basis of a phone call that conveyed information from a third party (not the victim herself, or even the individual that the victim allegedly conveyed the information to), and another similar note that has no identified source beyond the individual who wrote it down, are simply insufficient to dissolve probable cause because neither would have undermined Rachael's credibility at the time the arrest warrant was requested.

Moreover, there is nothing to suggest that this evidence would have been material or would have called Rachael's credibility or reliability into question for the purposes of Cleary's *Brady* claim. Cleary asserts that the information about Kristi, specifically the note on the CPS intake sheet, "could have persuaded a jury to render a not guilty verdict; Kristi would have been a child witness testifying to the exact opposite of Rachael during trial." Cleary explains that this fact was of "critical importance because when Kristi denied being sexually abused by Cleary, consistently, these facts, *in union with Rachael's inconsistency and other factors*, were potentially exculpatory and impeaching to Cleary." However, Cleary's argument is flawed. Cleary himself stated that Kristi consistently denied that she was abused so, had she testified, she would not have testified to the exact opposite of Rachael. Rather, their testimony would have been consistent because Rachael testified at the trial that only she had been abused.

Cleary next argues that his Fourth and Fourteenth Amendment rights were violated when Lamb stated in his report that Rachael brought in her own doll and demonstrated penetration with it during her interview with Lamb. Cleary argues that "[t]his material misrepresentation would tend to cast more doubt on the credibility of not only Rachael, but Wolf as well." Cleary asserts that

- 25 -

No. 09-1441
*Cleary v. County of Macomb, et al.*

Lamb's misrepresentation about the fact that Rachael brought in and used her own dolls to demonstrate abuse gave the jury "two *consecutive* separate interviews with Rachael demonstrating thorough sexual penetration with dolls," but that "[h]ad Lamb been honest . . . a jury would have had two separate interviews where Rachael did not use the dolls in any way . . . ." Cleary argues that her refusal to use the dolls brought by Lamb to his interview with Rachael would have "made her allegations even more suspicious and her inconsistencies greater."

Although Cleary asserts rather pointedly that "Lamb lied" about Rachael bringing her own dolls to her interview with Lamb, Cleary grossly misstates the information in Lamb's report to support this allegation. In fact, the report does not explicitly state that Rachael brought her own dolls to the interview; rather, Lamb writes in the report that when she was asked to explain what "down there" was referring to, Rachael "indicated on her doll the area of the crotch." Whether this doll actually belonged to Rachael, or whether Lamb was referring to a doll that he brought and gave to Rachael to use (thus making it "her doll" during the course of the interview), is simply unclear from the report, despite Cleary's allegations. To the extent Rachael's use of the dolls was inconsistent, in that she initially refused to use the dolls in her interview with Szlezyngier but later demonstrated the abuse in her meeting with both Wolf and Lamb, this information was disclosed in Szlezyngier's March 23, 1987 letter to Lamb and turned over to the prosecutor when Lamb sought the arrest warrant. Accordingly, Cleary failed to demonstrate that there was any misstatement or failure to disclose this piece of information by Lamb that resulted in a violation of his constitutional rights.[8]

---

[8]As discussed below, Cleary did submit an affidavit from Schwartz indicating that Rachael did not play with dolls as toys, would not have brought her own doll to the meeting with Lamb, and

No. 09-1441
*Cleary v. County of Macomb, et al.*

Cleary also alleges that Lamb withheld the fact that Rachael "played court" with Schwartz. Again, Cleary does not argue that disclosing this evidence would have dissolved probable cause, and the record does not demonstrate that it would have. Although the fact that Schwartz and Simon "played court" with Rachael may be problematic, it is also not entirely surprising given the fact that Rachael, a seven-year-old child, had previously expressed fear about going to court. Moreover, prior to seeking the arrest warrant, Rachael consistently relayed to all individuals who interviewed her that she had been abused by Cleary and had provided significant details about these assaults, all of which was presented to the prosecutor and the court in order to demonstrate probable cause. The fact that Rachael may have played court is simply not enough to dissolve probable cause as it existed at the time of the arrest warrant.

With regard to his Fourteenth Amendment *Brady* claim, Cleary argues that although the district court asserted that this information would have been cumulative for impeachment purposes, "the government cannot satisfy its *Brady* obligation to disclose exculpatory evidence by making some evidence available and claiming the rest would be cumulative." Instead, Cleary argues that the government was obligated to disclose all material relating to the credibility of a government witness,

---

did not want to play with or use the anatomically correct dolls during that meeting. However, the affidavit does not state that Lamb falsified the information that Rachael actually demonstrated abuse on the dolls, regardless of whether or not she *wanted* to use them. Thus, this affidavit does not create a genuine issue of material fact, nor does it alter the conclusion that Lamb did not violate Cleary's constitutional rights. Moreover, even assuming that Lamb did misrepresent the information in his report and that Rachael did not use the doll, this would not have dissolved probable cause or been material to Cleary's guilt for the purpose of a *Brady* violation. The fact that Rachael may not have used the doll during her interview with Lamb was merely cumulative of the evidence that already established that Rachael's use of the anatomically correct dolls was inconsistent, as she had not used the dolls when she met with Szlezyngier but did use them when she met with Wolf.

No. 09-1441
*Cleary v. County of Macomb, et al.*

and that the district court was required to view this evidence "in the more sinister slant." Ultimately, Cleary's claim seems to argue primarily that this information could have been used to impeach Rachael. However, Rachael's credibility already was significantly undermined at both the preliminary hearing and the trial, as Cleary himself acknowledges in his complaint, because she would not identify where she was touched by Cleary, did not use the word "potty" consistently as she had previously, the facts of her story changed at various times, and she denied admitting to Wolf that she was nervous about coming to court because she saw someone lying on television. Additionally, Rachael testified at both the preliminary hearing and at trial that she talked to Schwartz almost every day about the incident, opening up the possibility that Schwartz may have influenced Rachael's development of the story of the abuse. Cleary, as a party to the custody dispute, was aware of Schwartz's possible motive to get Rachael to lie, he was aware of the evolving and increasingly strange accusations made by Rachael, and he was aware from Lamb's report that Rachael had become "shy" and had started to have difficulty talking about the abuse allegations. The fact that Rachael specifically "played court," on top of all of this information, was not material for the purpose of impeaching Rachael's credibility or arguing the "sinister slant" that Rachael could be lying. Ultimately, this piece of information "is not so clearly favorable or materially exculpatory to support a constitutional claim." *Cleary II*, at 16.

Cleary next argues that Lamb violated his Fourth and Fourteenth Amendment rights by failing to disclose that Rachael had written a note to Wolf that used the words "penis" and "semen." Cleary claims that "it is of no moment that Lamb never saw or had possession of the note," because Wolf had seen the note, therefore "without a doubt, Lamb had knowledge of the note content through

- 28 -

his several conversations with Wolf and Szlezyngier." First, Cleary's complaint indicates that the note given to Wolf only used the word "semen," and stated that Cleary squirted "semen" onto her candy. In fact, Cleary was aware of Rachael's use of the word "penis," because it was revealed in Lamb's report, which was submitted for the purpose of obtaining the arrest warrant. More importantly, Cleary does not deny in his brief that Lamb never saw or had possession of the note given to Wolf by Rachael. In fact, Cleary argues that Lamb had knowledge of the contents of the note through his conversations with Wolf and Szlezyngier. To the extent the note reflected Rachael's allegations that Cleary gave her a candy bar with his semen on it, Lamb had already indicated this in his report (that was disclosed when seeking Cleary's arrest warrant), because Rachael had conveyed that information to him during their meeting. All that remains to Cleary's allegations then is the fact that Rachael wrote and used the word "semen." However, because there is no proof that Lamb ever had possession of the note, he cannot now be said to have violated Cleary's rights for withholding it.[9]

Finally, Cleary argues that Lamb should have disclosed that Rachael made allegations in 1988 that Schwartz and Gary Schwartz physically and emotionally abused her, and his failure to do so resulted in a violation of his Fourteenth Amendment rights under *Brady*.[10] Cleary claims that

---

[9]Cleary also asserts that the district court failed to address other descriptive statements made by Rachael, specifically that she told Wolf that what came out of Cleary's penis was "bumpy like cream of mushroom soup." While he presented this factually in his response to the motion to dismiss, he never challenged Lamb's alleged withholding of this statement. Accordingly, we need not address it on appeal.

[10]As the arrest warrant was obtained in 1987, Cleary cannot and does not claim that it resulted in his detention without probable cause.

No. 09-1441
*Cleary v. County of Macomb, et al.*

Wolf had knowledge of this information, which was not disclosed to the prosecutor. He also argues that, contrary to Lamb's testimony, Lamb was involved in the Cleary case after the arrest warrant issued, and that this is when Beard would have talked to Lamb and should have been given this information. Cleary asserts that Szlezyngier would have had a duty to report any abuse, and that Lamb "clearly did not document all communications he had and Szlezyngier testified that she does not remember if she would document all communications she had with law enforcement." Thus, Cleary claims that "Szlezyngier more likely than not notified Lamb about the abuse allegations as well," and Lamb therefore was responsible for a failure to disclose the abuse allegations to Beard.

Regardless of Lamb's continued involvement in the Cleary case, Cleary has failed to demonstrate that Lamb had any actual knowledge regarding the allegations of physical abuse. Even though a protective services employee may have been required to report violations of the penal code to law enforcement, as Cleary asserts, and even assuming that the allegations of abuse rose to the level of penal code violations, Cleary presents nothing to support his claim that this information was given specifically to Lamb. Any law enforcement officer could have received this information, and there is nothing in the record to demonstrate that Lamb knew of and then failed to disclose these allegations of abuse.

As a result, Cleary has failed to demonstrate that any of the allegedly withheld information resulted in his continued detention without probable cause or a violation of his right to a fair trial under *Brady* and the Fourteenth Amendment. Although Cleary asserts that the district court did not examine the materiality of the evidence collectively for the purpose of his *Brady* claim, as it was required to do, a full review of the evidence demonstrates that the court did not err in granting

No. 09-1441
*Cleary v. County of Macomb, et al.*

summary judgment in favor of Lamb. *See Kyles*, 514 U.S. at 436. Viewing the evidence cumulatively, there is nothing to indicate that the result of his trial would have been different. Accordingly, the district court properly granted summary judgment in favor of Lamb.

### 2. Macomb County:

The district court also granted summary judgment in favor of Macomb County. On appeal, Cleary argues that Macomb County is not entitled to summary judgment because questions of fact remain "regarding whether the constitutional deprivations in the arrest of Cleary, the withholding of exculpatory and impeaching information, and the misrepresentation of such information were caused by the County's custom, policy and practice of not training, supervising, or acquiescing in the unconstitutional conduct of its officers." Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be liable to a plaintiff under § 1983 if the plaintiff demonstrates that a constitutional violation occurred and that it was the result of a "policy or custom" of the municipality. *Id.* at 694. Where, as here, there is no constitutional violation, there can be no municipal liability. Accordingly the district court properly granted summary judgment in favor of Macomb County.

### 3. Affidavits

Additionally, Cleary argues that the district court erred when it failed to consider three affidavits submitted in support of his response to the motion for summary judgment. Specifically, Cleary attached one affidavit from George Kirkham, an expert in police practices; one from Schwartz; and one from Dr. Gordon Blush, a psychologist employed by Macomb County. Cleary

No. 09-1441
*Cleary v. County of Macomb, et al.*

argues that the court should have considered these three affidavits, and its failure to do so constitutes grounds for reversal because they raised issues of fact material to Cleary's claims.

Despite Cleary's assertions, Schwartz's affidavit does not create a genuine issue of material fact. In her affidavit, Schwartz states that Lamb brought an anatomically correct doll to his meeting with Rachael, and that "Rachael did not want to play or use the doll in any manner."[11] Regardless of whether Rachael *wanted* to use the doll, the affidavit simply does not state that she did not actually *use* the doll, as Lamb indicated in his report. Thus, the affidavit does not create a genuine issue of material fact and it is not otherwise relevant to or necessary for resolving Cleary's claims. As to the expert affidavits, Kirkham's affidavit presents his assessment of "the failures and omissions of Sgt. Lamb" and other issues in the case. Blush's affidavit also challenges Lamb's conduct, and specifically concludes that he did not properly investigate the allegations of abuse in light of the existing custody dispute. Although Cleary argues that these affidavits are based on facts in the record and that the "expertise" of these two individuals "goes to the heart of the issues before the court," neither of these affidavits were necessary to resolve Cleary's claims, and in large part they do little more than repeat matters already raised by Cleary in his pleadings. Thus, the district court did not err in failing to consider these when deciding on the motion for summary judgment.

---

[11]Despite procuring and submitting the affidavit in support of his own response to Lamb and Macomb County's motion for summary judgment, Cleary's counsel initially asserted at oral argument that Schwartz's affidavit stated that there was "no doll" at Lamb's interview with Rachael and that Lamb made up this fact in his report. As counsel later acknowledged on rebuttal, that is not what the affidavit actually says. In fact, the affidavit expressly states that Schwartz "witnessed Det. Warren Lamb bring out an anatomically correct doll and him saying that he wanted to show Rachael the doll and interview her with it."

No. 09-1441
*Cleary v. County of Macomb, et al.*

**C. Discovery**

Finally, Cleary argues that "[t]he [d]istrict [c]ourt limited Cleary to five depositions (Lamb, Wolf, Szlezyngier, Beard, and Schwartz)," and that "Cleary has since learned of additional individuals, some never previously disclosed (others known before), who clearly would have firsthand pertinent knowledge to Cleary's claims." Cleary specifically names Dee Cassin, a social worker for Macomb Family Services who reported the 1988 allegations of abuse made by Rachael; Larry Burke, who was Szlezyngier's supervisor; Lieutenant Mentzer, Lamb's supervisor; Patricia McDonald, Wolf's supervisor and project coordinator of the CSATT; Terry Hutton, a counselor from Macomb Child Guidance who was involved with the Schwartz and Cleary family; and Denise Jansen Capp, who performed a psychological evaluation on Rachael. Cleary claims that the district court's refusal to address "the issue" was in error, and that the court "should have granted Cleary's request and permitted him to pursue the discovery sought." However, Cleary does not explain why these individuals are relevant to his claim, what information he seeks, or how the court abused its discretion in failing to permit him to depose these individuals. *See Plott v. General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995) .

**III. CONCLUSION**

The facts as alleged by Cleary present a tragic and regrettable situation that resulted in this plaintiff spending sixteen years in prison, in part because of allegations by his own daughter that were later recanted. Nonetheless, the fault for his incarceration does not lie with the investigators and Macomb County officials named as defendants in the instant action. The named defendants were simply doing their jobs by investigating the allegations of abuse, and in doing their jobs none

No. 09-1441
*Cleary v. County of Macomb, et al.*

of the defendants acted in a way that would subject them to liability under § 1983 for violations of Cleary's constitutional rights. Rather, the fault for Cleary's continued incarceration lies with those who fabricated or assisted in the fabrication of the allegations against him. Accordingly, for the reasons set forth above, we AFFIRM the district court's September 6, 2007 order granting Szlezyngier, Wolf, and Barone's motions to dismiss, and its March 24, 2009 order granting Lamb and Macomb County's motion for summary judgment.

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Leonard Green
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: February 02, 2011

Mr. Michael S. Daoudi
Ms. Dora G. Hermiz Sokolowski
Mr. Andre M. Sokolowski
The Lex Firm
26711 Northwestern Highway
Suite 200
Southfield, MI 48033

Re: Case No. 09-1441 , *Mark Cleary v. County of Macomb, et al*
Originating Case No. : 06-15505

Dear Counsel,

The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Sue Burlage
Case Manager
Direct Dial No. 513-564-7012

cc: Ms. Kimberly Horsley Allen
Ms. Cynthia A Arcaro
Ms. Hilary Ann Ballentine
Mr. Jeffrey Feikens
Mr. Michael O. King Jr.
Mr. Leonard M. Niehoff
Ms. Mary Massaron Ross
Ms. Barbara Ann Roulo
Ms. Ann M. Sherman

Mr. Lee A. Stevens
Ms. Maureen Terese Taylor
Mr. David J. Weaver

Enclosure

Mandate to issue